UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JOE DAVIS                                                      CIVIL ACTION

VERSUS                                                         NO. 07-9495

SHERIFF MARLIN N. GUSMAN, ET AL.                               SECTION: "C"(3)

ORDER AND REASONS

Plaintiff, Joe Davis, a state pretrial detainee,[1] filed this *pro se* complaint against Orleans Parish Criminal Sheriff Marlin Gusman and Dr. Samuel Gore. In this lawsuit, plaintiff claims that he was denied adequate medical care while confined within the Orleans Parish Prison system. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge.[2]

Defendants have filed a motion for summary judgment pursuant to Fed.R.Civ.P. 56.[3] Plaintiff was ordered to file a memorandum in opposition to that motion,[4] but he has failed to do so.

---

[1] Plaintiff indicates in the complaint that he is a pretrial detainee; however, in their motion for summary judgment, defendants indicate that he is a convicted prisoner. For the purposes of this lawsuit, plaintiff's status is irrelevant, in that the same standard for medical care is applicable to both pretrial detainees and convicted prisoners. See, e.g., Hare v. City of Corinth, 74 F.3d 633, 643 (5th Cir. 1996) (there is "no constitutionally significant distinction between the rights of pretrial detainees and convicted inmates to basic human needs, including medical care").

[2] Rec. Doc. 12.

[3] Rec. Doc. 16.

[4] Rec. Doc. 17.

In reviewing such a motion, the Court may grant summary judgment when no genuine issue of material fact exists and the mover is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). "Procedurally, the party moving for summary judgment bears the initial burden of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." Taita Chemical Co., Ltd. v. Westlake Styrene Corp., 246 F.3d 377, 385 (5th Cir. 2001) (quotation marks and brackets omitted). The party opposing summary judgment must then "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (quoting Fed.R.Civ.P. 56); see also Provident Life and Accident Ins. Co. v. Goel, 274 F.3d 984, 991 (5th Cir. 2001). Conclusory statements, speculation, and unsubstantiated assertions are not competent summary judgment evidence and will not suffice to defeat a properly supported motion for summary judgment. Ragas v. Tennessee Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998); Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415, 1429 (5th Cir. 1996).

The entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. The United States Supreme Court explained that, "[i]n such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 322-23 (quotation marks omitted).

Defendants first contend that the claim against Sheriff Gusman must be dismissed because there is no allegation that he was personally involved in the incidents giving rise to plaintiff's claim. Defendants are correct.

"Plaintiffs suing governmental officials in their individual capacities ... must allege specific conduct giving rise to a constitutional violation. This standard requires more than conclusional assertions: The plaintiff must allege specific facts giving rise to the constitutional claims." Oliver v. Scott, 276 F.3d 736, 741 (5th Cir. 2002) (citation omitted).[5] "Personal involvement is an essential element of a civil rights cause of action." Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983). In this case, plaintiff does not allege that Gusman *personally* denied him adequate medical care. Further, the fact that Gusman is the custodian and supervisory official in charge of the prison system

---

[5] Plaintiff does not specify in his complaint whether he is suing Gusman in his individual or official capacity. Gusman has assumed that he is being sued in his individual capacity, and this Court is operating under that same assumption. However, if plaintiff meant to assert an official-capacity claim, that claim would clearly fail for the following reasons.

"Official capacity suits generally represent another way of pleading an action against an entity of which an officer is an agent." Burge v. Parish of St. Tammany, 187 F.3d 452, 466 (5th Cir. 1999). Accordingly, an official-capacity claim against Gusman would in reality be a claim against the local governmental body itself. However, in order to hold a local governmental body accountable for a constitutional violation, a plaintiff must allege that (1) an employee of the local governmental body violated plaintiff's clearly established constitutional rights with subjective deliberate indifference, and (2) the violation resulted from a policy or custom adopted or maintained by the local governmental body with objective deliberate indifference. See Olabisiomotosho v. City of Houston, 185 F.3d 521, 528-29 (5th Cir. 1999). Plaintiff does not allege that the purported constitutional violations in this case resulted from an official policy or custom.

is not a basis to hold him liable for federal civil rights violations under any theory of strict liability[6] or vicarious liability.[7] Accordingly, plaintiff's claim against Sheriff Gusman must be dismissed.

Defendants next contend that the claim against Dr. Gore must be dismissed because plaintiff's medical care met constitutional standards. Again, defendants are correct.

It is clear that the constitutional rights of an incarcerated person, whether he is a pretrial detainee or a convicted prisoner, may be violated if his serious medical needs are met with deliberate indifference on the part of penal authorities. See Thompson v. Upshur County, Texas, 245 F.3d 447, 457 (5th Cir. 2001) (pretrial detainee); Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999) (convicted prisoner). However, the United States Fifth Circuit Court of Appeals has held:

> Deliberate indifference is an extremely high standard to meet. ... [T]he plaintiff must show that officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Furthermore, the decision whether to provide additional treatment is a classic example of a matter for medical judgment. And, the failure to alleviate a significant risk that [the official] should have perceived, but did not is insufficient to show deliberate indifference.

Domino v. Texas Department of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001) (quotation marks and citations omitted). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997); see also Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999).

---

[6] Harris v. Greer, 750 F.2d 617, 618 (7th Cir. 1984) ("[T]here is no concept of supervisor strict liability under section 1983."); see also Jenkins v. Wood, 81 F.3d 988, 994 (10th Cir. 1996).

[7] An official cannot be held liable pursuant to 42 U.S.C. § 1983 under any theory of vicarious liability. Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987); see also Oliver v. Scott, 276 F.3d 736, 742 (5th Cir. 2002) ("Section 1983 does not create supervisory or *respondeat superior* liability.").

In the complaint, plaintiff states his claim as follows: "I have been a physic patient my entire life and since being incarserated at Orleans Parish Prison, I have been refused any and all medication I need and have been acustomed to taking, to include my blood presure medication."[8] Defendants contend that plaintiff in fact received medication for his mental illness and did not require medication for high blood pressure. In support of their contentions, they point to plaintiff's unrebutted medical records which are attached to the motion for summary judgment.

Those records reflect that plaintiff disclosed his mental illness during the medical intake screening performed at the prison. On the screening form, he indicated that he had been diagnosed with schizophrenia but that he was *not* currently taking medication for his condition. That same information is reflected on the prison's initial health assessment exam. Following an evaluation, the prison psychiatrist determined that plaintiff needed no psychiatric medications at that time. Nevertheless, plaintiff was repeatedly examined and reevaluated over the course of his incarceration. When it was later determined that he could benefit from medication, he was in fact prescribed and given Risperdal, a medication approved for the treatment of schizophrenia.

While plaintiff perhaps disagrees with the determination that such medication was not necessary from the very beginning of his incarceration, that is not dispositive. A disagreement between an inmate and the medical staff concerning medical treatment generally is not actionable absent exceptional circumstances. Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995). Additionally, to the extent that plaintiff is simply arguing that he was not given the best medical care available, that is not the constitutional standard. See Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992)

---

[8] Rec. Doc. 1, p. 3.

(the fact that medical treatment "may not have been the best money could buy" was insufficient to establish a constitutional violation); McMahon v. Beard, 583 F.2d 172, 174 (5th Cir. 1978) (the applicable legal standard is not whether an inmate was provided the "optimum" or "best" medical care available). Rather, as noted, the applicable test is whether prison officials were *deliberately indifferent* to plaintiff's serious medical needs. In the instant case, there is simply no basis for a finding that prison officials were deliberately indifferent to plaintiff's mental health problems.

Regarding plaintiff's alleged high blood pressure, he indicated on the medical intake screening form that he did *not* have high blood pressure and was *not* currently taking medications. On the other hand, during the prison's initial health assessment exam, plaintiff did report his alleged condition; however, a test showed that his blood pressure was normal at that time. Further, over the course of his incarceration, plaintiff's blood pressure was checked on numerous occasions and was found to be high only once. In light of the foregoing, there is simply no basis for a finding that plaintiff in fact suffered from high blood pressure at all, much less to a degree that medication was required.

Accordingly,

**IT IS ORDERED** that defendants' unopposed motion for summary judgment is **GRANTED** and that plaintiff's claims are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, this seventeenth day of July, 2008.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**